UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
J & J SPORTS PRODUCTIONS, INC.,
as Broadcast Licensee of the March 19, 2005
Morales/Pacquaio Program,

       Plaintiff,    **MEMORANDUM and ORDER**

   -against-      05-CV-6083 (SLT)(VVP)

"JOHN DOE," said name being fictitious, the true
name being unknown to plaintiff, Individually, and as
officer, director, shareholder and/or principal of
Taqueria La Mixteca Rest. Inc. d/b/a Taqueria La
Mixteca Restaurant a/k/a Taqueria La Mixteca Rest.
and TAQUERIA LA MIXTECA REST. INC. d/b/a
TAQUERIA LA MIXTECA RESTAURANT a/k/a
TAQUERIA LA MIXTECA REST.,

       Defendants.
-----------------------------------------------------------------x
**TOWNES, United States District Judge:**

   In January 2005, plaintiff J & J Sports Productions, Inc., contracted with a boxing promoter to obtain the exclusive license to exhibit within the United States the telecast of a March 19, 2005, boxing program (the "Program"). On March 19, 2005, an investigator hired by plaintiff visited Taqueria La Mixteca Restaurant in Brooklyn (hereinafter, the "Restuarant"), where he observed a television exhibiting the Program to the patrons. The Restaurant was not authorized by plaintiff to exhibit the Program and, on December 27, 2005, plaintiff brought this action pursuant to 47 U.S.C. §§ 553 and 605 against both the Restaurant and "John Doe," an unknown officer, director, shareholder and/or principal of the Restuarant, alleging that defendants intercepted the signal for the Program without authorization.[1] After defendants failed to answer or to otherwise respond to its complaint, plaintiff filed the instant motion for a default

---

[1]Plaintiff subsequently amended the complaint to substitute Julio Villalobos for "John Doe," and to identify Villalobos as "the individual with supervisory capacity and control over the activities occurring within the [Restaurant] on March 19, 2005."

judgment, seeking statutory damages of up to $10,000 pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II); enhanced damages of up to $100,000 pursuant to 47 U.S.C. §605(e)(3)(C)(ii); and costs and attorneys' fees. For the reasons stated below, plaintiff's motion is granted and a judgment will be entered against defendants, jointly and severally, in the amount of $7,611.50.

*The Consequences of Defendants' Default*

"Where, as here, 'the court determines that [a] defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Chen v. Jenna Lane, Inc.*, 30 F. Supp 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2688, at 58-59 (3d ed. 1998)). Accordingly, by defaulting in this case, defendants have conceded, *inter alia*, that they (1) "willfully violated 47 U.S.C. § 605(a)," Complaint at ¶ 21, Amended Complaint at ¶ 21, and (2) "willfully violated 47 U.S.C. § 553." Complaint at ¶ 35, Amended Complaint at ¶ 35.[2]

---

[2] Plaintiff's pleadings also allege upon information and belief that defendants violated 47 U.S.C. § 605(e)(4) by "modif[ying] a device or utiliz[ing] equipment, knowing or having reason to know that the device or equipment is used primarily in the assistance of the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for [another] . . . activity" prohibited by 47 U.S.C. § 605(a). Complaint at ¶ 26; Amended Complaint at ¶ 26. However, very similar allegations have been held to be insufficient to create liability under § 605(e)(4). *See, e.g., Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064 (FB) (KAM), 2005 WL 2476264, at *5 (E.D.N.Y. Oct. 7, 2005). As the *Morales* Court noted, "several district courts have recognized [that] . . . § 605(e)(4) . . . is aimed at upstream manufacturers and distributors, not the ultimate consumer of pirating devices." *Id.* (internal citations and quotations omitted). Allegations of the sort contained in plaintiff's pleadings do not support a finding that defendants were "more than 'ultimate consumers' or 'end users' of an illegally modified device, as opposed to 'upstream manufacturers and distributors' of such a device" and, therefore, provide an insufficient factual basis for finding liability under § 605(e)(4). *Id.* Accordingly, to the extent that plaintiff's motion can be read as requesting

Although defendants have admitted liability under both § 605 and § 553, plaintiff "can recover under only one statute." *Kingvision Pay-Per-View Ltd. v. Brito*, No. 05 CV 1042 (GBD) (RLE), 2006 WL 728408, at *1 (S.D.N.Y. Mar. 20, 2006) (Report and Recommendation of Ellis, M.J.) (citing *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129 (2d Cir. 1996)). Since plaintiff has elected to recover under §605, which provides "far more severe penalties than those of § 553(c)," *International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993), this Court will determine the damages recoverable under that statute.

*Damages Under § 605*

Section 605(e) provides, *inter alia*, that any person aggrieved by a violation of § 605(a) can bring a civil action in district court, in which the court:

> (i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of . . . [§ 605(a)];
>
> (ii) may award damages as described in subparagraph (C); and
>
> (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B). Subparagraph (C) permits the recovery of either actual damages under (C)(i)(I), or statutory damages under (C)(i)(II). Plaintiff requests that this Court award statutory damages. *See* Plaintiff's Memorandum of Law ("Plaintiff's Memo") at 4.

The statutory damages provision, § 605(e)(3)(C)(i)(II), provides, in pertinent part:

> [T]he party aggrieved may recover an award of statutory damages for each violation of [§ 605(a)] . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . .

---

damages for a violation of § 605(e)(4), this Court declines to award such damages.

In addition, § 605(e)(3)(C)(ii) states:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of [§ 605(a)] . . . .

Although § 605 provides little guidance as to how to set damages within the statutory range, "courts in this circuit have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events." *Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064 (FB) (KAM), 2005 WL 2476264, at *6 (E.D.N.Y. Oct. 7, 2005) (Report and Recommendation of Matsumoto, M.J.) (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999)). First, in cases where the exact number of patrons is unknown, courts have awarded flat sums based on what the court "considers just." *See*, *e.g.*, *Entertainment by J & J, Inc. v. Suriel*, No. 01 Civ. 11460 (RO), 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding $11,000 in statutory damages); *Home Box Office v. Champs of New Haven, Inc.*, 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000 in statutory damages). Second, "[i]n cases where there is uncontradicted evidence of the number of patrons viewing the match in the establishment, courts have . . . multiplied the number of patrons by a set sum," and have awarded that amount "plus any cover charges or other profits attributable to the unauthorized viewing." *Morales*, 2005 WL 2476264, at *6. Although the "set sum" varies widely, with some courts awarding as little as $20, *see Time Warner Cable v. Sanchez*, No. 02 Civ. 5855 (GBD)(FM), 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003), and some courts awarding as much as $300, *see Garden City Boxing Club, Inc. v. Salcedo*, No. 04 Civ. 5027 (DFE), 2005 WL 2898233, at *2 (S.D.N.Y. Nov. 3, 2005), many courts have found $50 to be the appropriate amount. *See*, *e.g.*, *Entertainment by J*

4

*& J, Inc. v. Mama Zee Rest. & Catering Services, Inc.*, No. CV-01-3945 (RR), 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002); *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 490; *Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997); *Cablevision Sys. Corp. v. 45 Midland Enter., Inc.*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994).

Plaintiff urges this Court to award a flat sum of $10,000 in statutory damages, the maximum amount permissible under § 605(e)(3)(C)(i)(II). However, as plaintiff itself notes, courts in this district tend to award damages "based on a patron count multiplied by $50." Plaintiff's Memo at 6. Indeed, this is the very approach utilized in *Mama Zee*, one of the cases cited by plaintiff in support of its request for a flat sum of $10,000. *See Mama Zee*, 2002 WL 2022522, at *3-*4. Thus, this Court declines to award a flat sum, and will calculate statutory damages by multiplying the patron count by $50.

Plaintiff has provided a "Piracy Affidavit," attached as an exhibit to "Plaintiff's Affidavit for Default," in which an investigator, Thomas Larkin, states that he visited the Restaurant around 9:22 p.m. on March 19, 2005, and took three "head counts" of the patrons watching the Program. Mr. Larkin counted ten people on his first count, and fourteen patrons on both the second and third counts. However, if this Court simply averages these numbers and multiplies that average by $50, the award would be only $633.33. Since this is less than the statutory minimum of $1,000, this Court awards plaintiff statutory damages in the amount of $1,000.

Plaintiff is also entitled to enhanced damages. It is beyond question that the § 605(a) violation "was committed willfully and for purposes of direct or indirect commercial advantage." § 605(e)(3)(C)(ii). After all, "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Googies Luncheonette*, 77 F. Supp. 2d at

490. However, in awarding enhanced damages, courts have borne in mind that "although the amount of damages should be an adequate deterrent, [a single] violation is not so serious as to warrant putting the restaurant out of business." *Garden City Boxing Club, Inc. v. Polanco*, No. 05 Civ. 3411 (DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb 7, 2006).

In urging this Court to award "substantial enhanced damages," plaintiff alleges that defendants were caught pirating another closed-circuit television program on May 14, 2005. Yet, that alleged piracy occurred well prior to the commencement of this action. According to plaintiff's counsel's affidavit, a "claim letter" was issued on May 9, 2005, but it is unclear precisely when such letter was received by defendants. Therefore, the fact that defendants may have committed a second act of piracy does not compel the conclusion that defendants; behavior is so willful as to necessitate greatly enhanced damages.

Plaintiff's allegations do, however, raise a concern about awarding too substantial a measure of enhanced damages. As Plaintiff's Memo notes, courts in this district have tended to award about $10,000 in enhanced damages, with some courts awarding as little as $5,000, *see*, *e.g.*, *Taco Rapido*, 988 F.Supp. at 112, and other courts awarding as much as $25,000. *See Cablevision v. Maxie's North Shore Deli Corp.*, No. CV 88 2834 (ASC), 1991 WL 58350, at *2 *E.D.N.Y. Mar. 20, 1991). This Court itself has repeatedly opined that enhanced damages of $10,000 are sufficient to discourage further piracy, yet not so harsh as to drive the defendants out of business. *See*, *e.g.*, *Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 64 (E.D.N.Y. 2006).

In this case, plaintiff's counsel has failed to disclose that, less than one month prior to filing the motion for a default judgment in this action, she commenced another action against

6

defendants to recover damages pursuant to 47 U.S.C. §§ 553 and 605 for their actions on May 14, 2005. *See Kingvision Pay-Per-View Ltd. v. Villalobos*, No. 06-CV-2510 (FB)(MDG). The failure to disclose this important fact creates a real danger that courts addressing defendants' cases will collectively impose greater enhanced damages than they might individually consider appropriate and, thereby, unintentionally drive defendants out of business, to everyone's detriment. This Court urges plaintiff's counsel to take care to identify other cases involving the same defendant(s) so that all courts can accurately assess the impact the enhanced damages are likely to have on the defendants.

In this case, it is apparent that Taqueria La Mixteca is a small business. According to the "Piracy Affidavit," the Restaurant's approximate capacity is only 25 people. Indeed, the Restaurant had no more than 20 patrons at any time during either of the investigators' visits. This Court believes that total enhanced damages of $10,000 should suffice to prevent defendants from repeating their conduct. However, in recognition of the likelihood that some measure of enhanced damages may also be awarded in *Villalobos*, this Court will award enhanced damages of only $5,000 in this case.

<u>Attorneys' Fees and Costs</u>

Section 605(e)(3)(B)(iii) expressly provides that a court "shall direct the recovery of full costs, including reasonable attorneys' fees to an aggrieved party who prevails." Relying on this language, courts in this Circuit have repeatedly held that "under Section 605 the award of costs and attorneys' fees is mandatory." *Polanco*, 2006 WL 305458, at *4; *see also Morales*, 2005 WL 2476264, at *9. However, a party seeking attorneys' fees must nonetheless "support that request with contemporaneous time records that show, for each attorney, the date, the hours

7

expended, and the nature of the work done." *Morales*, 2005 WL 2476264, at *9 (internal quotations and citations omitted).

In this case, plaintiff's counsel has provided the required documentation. This Court has fully reviewed the time records and finds that the 4.87 hours spent on this case by the attorney, and the 2.5 hours spent by a paralegal, to be entirely reasonable. In addition, although plaintiff's counsel has not attached a copy of her *curriculum vitae*, this Court is aware, based on its own research in this case, that plaintiff's counsel is very experienced in handling cases of this sort. Her fee of $200 per hour, and the $75 per hour fee she charges for her paralegal's time, are both well within the range awarded in this district. *See*, *e.g.*, *Commission Express Nat'l, Inc. v. Rikhy*, No. CV-03-4050 (CPS), 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners; $100 to $150 for junior associates and $200 to $250 for senior associates" and from $60 to $75 for paralegals). Accordingly, plaintiff is awarded attorneys' fees totaling $1,161.50.

With respect to costs, plaintiff is entitled to recover both the $250 filing fee and the $200 it cost to serve the summons and complaint on defendants. However, there is a more substantial question as to whether plaintiff is entitled to recover the $350 fee charged by the investigator who visited the Restaurant on March 19, 2005.

Although a plaintiff is entitled to recover its "full costs" under § 605(e)(3)(B)(iii), many courts have interpreted the term, "full costs," as meaning, "taxable costs." *See*, *e.g.*, *Sanchez*, 2003 WL 21744089, at *5 (treating investigative fees as taxable costs); *Salcedo*, 2005 WL 2898233, at *3 (including the investigator's fee as part of "costs and disbursements"); *Garden City Boxing Club, Inc. v. Bello*, No. CV-05-1300 (ARR) (JMA), 2005 WL 2496062, at *6

8

(E.D.N.Y. Sept. 20, 2005) (implying that investigative costs are taxable costs); *Kingvision Pay-Per-View Ltd. v. Cardona*, No. 03 Civ. 3839 (GBD) (FM), 2004 WL 1490224, at *4 (S.D.N.Y. June 30, 2004) (treating investigative costs as taxable costs). Since 28 U.S.C. § 1920, the statute listing the expenses which can constitute "taxable costs," makes "no provision for a prevailing party to be awarded the cost of its investigator," at least two courts have held that investigator's fees cannot be awarded under § 605(e). *See Cardona*, 2004 WL 1490224, at *4; *Sanchez*, 2003 WL 21744089 at *5.

While the term, "full costs," is not defined in the statute, both the plain meaning of the statutory language and the legislative history of § 605(e)(3)(B)(iii) suggest that this term was intended to include expenses other than "taxable costs." First, under 28 U.S.C. § 1920, taxable costs include only the following expenses:

> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under [28 U.S.C. § 1923];
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

Because this list "embodies Congress' considered choice" as to what expenses should be taxable, courts are not permitted to allow taxation of costs not included in the list. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440-42 (1987). Attorneys' fees are not on the list; therefore,

9

"taxable costs" do not include attorneys' fees. However, § 605(e)(3)(B)(iii) implies that "full costs" include "reasonable attorneys' fees." Therefore, the "full costs" permitted under § 605(e)(3)(B)(iii) both differ from, and can exceed, the "taxable costs" recoverable under 28 U.S.C. § 1920.

Second, what little legislative history exists also supports this broad reading of the term, "full costs." Upon approval of the Cable Communications Policy Act of 1984 – the legislation which added the relevant portions of 47 U.S.C. § 605 – the Chairman of the Senate Committee on Commerce, Science, and Transportation issued the following statement:

> It is the intent of the Committee that the power to direct the recovery of all costs under (3)(B)(iii) shall include reasonable investigative fees (related to the action brought) of an aggrieved party.

Statement of Sen. Robert W. Packwood, Chairman of Comm. on Commerce, Science, & Transp., 130 Cong. Rec. § 14286 (daily ed. Oct. 11, 1984), *as reprinted in* 1984 U.S.C.C.A.N. 4742, 4750, 1984 WL 37497 (Leg. Hist.) (1984). Although there is nothing to suggest that Congress as a whole shared the Committee's intent when it enacted the statute at issue, this language at least supports the view that Congress intended "full costs" to include investigative costs.

Even though the awarding of "full costs" is mandatory, *see*, *e.g.*, *Polanco*, 2006 WL 305458, at *4, "[t]he legislative history for § 605(e) instructs that the court has the power to direct the recovery of investigative fees, not that the court is required to order such an award." *International Cablevision, Inc. v. Noel*, 982 F. Supp. 904, 918 (W.D.N.Y. 1997). In order to recover investigative costs a plaintiff must make a showing similar to that required to recover attorneys' fees. *Id.* ("a request for investigative fees pursuant to § 605(e)(3)(B)(iii) should be subject to the same level of scrutiny to which requests for attorneys' fees are subjected"). Thus, a plaintiff must document "(1) the amount of time necessary for the investigation; (2) how much

the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested rate." *Id.*

In this case, the documentation supplied by plaintiff's counsel is insufficient. Although the investigator's invoice, attached as Exhibit D to Plaintiff's Affidavit for Default, indicates that plaintiff paid the investigator $350 for "Observation and 2 photos" of the premises, plaintiff has not adduced any evidence concerning the investigator's qualifications or hourly rates. Accordingly, this Court has no basis for assessing the reasonableness of this rate.

Even if this Court were to assume that Mr. Larkin, like other investigators employed by plaintiff, charged $350 per hour, it still would not conclude that the investigator's fees sought by plaintiff are reasonable. A rate of $350 per hour would exceed the rate usually awarded to experienced attorneys in this district. *See*, *e.g.*, *LaBarbera v. J.E.T. Resources, Inc.*, 396 F. Supp. 2d 346, 352 (E.D.N.Y. 2005) (rates of $250 to $350 per hour are unreasonably high for legal services in this district). Moreover, this Court would have no basis for determining how Mr. Larkin spent the majority of the hour for which he charged plaintiff. The investigator's own "Piracy Affidavit" indicates that the investigator was inside the Restaurant for only four minutes, and returned two days later to take two photographs of the exterior of the restaurant. In light of the poor quality of the two photographs attached to the Piracy Affidavit, it seems highly unlikely that the photography took 56 minutes.

Because of these deficiencies in the evidence concerning the investigative costs, this Court declines to award such costs. Accordingly, plaintiff is hereby awarded costs of $450.00.

## CONCLUSION

For the reasons stated above, plaintiff's motion for a default judgment is granted. Defendants Julio Villalobos and Taqueria La Mixteca shall be jointly and severally liable to plaintiff for $1,000 in statutory damages pursuant to § 605(e)(3)(C)(i)(II); $5,000 in enhanced damages pursuant to § 605(e)(3)(C)(ii); $1,161.50 in attorneys' fees and $450 in costs. Accordingly, the Clerk of Court is directed to enter judgment against these defendants and in favor of plaintiff in the total amount of $7,611.50.

**SO ORDERED.**

/s/
SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
February 6, 2007